Durfee, Judge,
delivered the opinion of the court:*
This case involves the interpretation of railroad tariffs for the shipment of Government ammunition. Atlantic Coast Line Eailroad (ACL), plaintiff’s predecessor, and its connecting lines transported the ammunition for defendant from Panhandle, Nebraska to Defense, Texas, a storage-in-transit point, and thence on a new bill of lading to Goldsboro, North Carolina. The re-shipment from Defense was routed by defendant to New Orleans, Louisiana to Montgomery, Alabama to Goldsboro. For transportation purposes, the shipment is charged in the same manner as if it had moved from original point of origin at Panhandle, Nebraska to final destination at Goldsboro, North Carolina.
ACL billed defendant according to “through single-factor” rates, and was paid, but later determined that these rates were not applicable, and billed defendant for the addi *51 tional amount of $940.39 due under the combination rate. Payment was refused.
When shipments moved from Defense, Texas to Golds-boro, North Carolina, they were routed by defendant via the Texas & Pacific Eailroad Company (T & P), the Louisville and Nashville Eailroad Company (L & N), and ACL. This necessitated the movement of the shipments via T & P to New Orleans, Louisiana, via L & N to Montgomery, Alabama, and via ACL to final destination. In order for T & P to comply with the routing set out in the bills of lading and deliver the shipments in question to L & N, the shipments were moved through Arkansas and Louisiana, and had to move through New Orleans where they necessarily crossed the Mississippi Eiver over the New Orleans Eiver Crossing, which is south of Memphis, Tennessee. The shipments then moved to Montgomery, and from there on to final destination, via the carriers indicated above.
Item 240-B, Supplement 276 to Western Trunk Lines’ Freight Tariff No. 385 (Joint Ex. G — hereinafter sometimes referred to as “Item 240-B” or “the tariff item”), provided in pertinent part:

*52 The testimony and documentary evidence show that Panhandle, Nebraska, was in Group 1058, one of the several groups in Nebraska embraced by Item 240-B.
Following a trial, Commissioner Stone made Findings of Fact without Opinion or recommended Conclusion of Law. Despite plaintiff’s exceptions, we adopt the Commissioner’s Findings, and conclude therefrom that, as a matter of law, plaintiff is not entitled to recover.
It will be noted that Item 240-B is divided into two (unnumbered) parts or provisions, but that the parts designated under the heading “Between points in” remain constant and relate to both parts. The provision in the first part is plainly restrictive and, considered alone, means that the through single-factor rates are not applicable to shipments made between designated points in certain states, including Panhandle, Nebraska, involved here, and points in the four states named in said part, including North Carolina points, via “Mississippi River Crossings south of Memphis, Tenn.”; and that, in other words, all such shipments must move across the Mississippi River at or north of Memphis in order for said rates to apply.
The second part or provision of Item 240-B provides that when shipments between designated points in certain states (including Panhandle, Nebraska) and points in ten named states, including all four of the states specifically listed in the first part of the tariff item, are routed through Arkansas or Louisiana, the through rates will not apply to such shipments if they cross the Mississippi River north of Memphis, Tennessee.
The parties have stipulated that the issue in this case is as follows:
Whether Item 240-B of Supplement 276, Western Trunk Lines’ Freight Tariff 385, prohibits the application of through smgle-factor rates to the shipments involved.
In brief, plaintiff contends that the second part, referring to shipments moving through Arkansas and Louisiana, is *53 clearly an added restriction to the one in the first part, but defendant states it is alternate.
Both parties argue that Item 240-B of the tariff is not ambiguous, but we agree with the finding of the Commissioner that the provisions in the first and second parts of the “Exceptions to Application of Rates” are, when read together, ambiguous.
The ambiguity of these two provisions, when read together, is clear. If the tariff, which was drafted by plaintiff and its associate railroads, was meant to state that when a shipment originates in Nebraska and is routed through Arkansas or Louisiana, the shipment can only cross the river at Memphis, the railroads should have clearly said so. However, defendant’s General Accounting Office consistently adopted a different tariff interpretation as to the permissible routing, and plaintiff concurred in this interpretation when it first billed defendant. Any ambiguity in the tariff must be construed against its author, plaintiff, 4 WILLISTON ON CONTRACTS § 621 (Jaeger ed. 1961); 3 CORBIN ON CONTRACTS § 559 (I960); RESTATEMENT OF CONTRACTS § 236(d) (1932)[1] and what is not restricted is permitted. 4 WILLISTON ON CONTRACTS, supra, § 610B, pp. 532-3.
The exception in the first part is general whereas the exception in the second part is more specifically applicable to the shipments, since they did move through Arkansas and Louisiana. The second part conflicts with, contravenes, and is alternate to the first part, and the provision of the second part is a specific one that takes precedence over the general provision of the first. 4 WILLISTON ON CONTRACTS, supra, § 619, p. 743; 3 CORBIN ON CONTRACTS, supra, § 547, p. 176; RESTATEMENT OF CONTRACTS, supra, § 236(c). With respect to the shipments involved, which were “routed through Arkansas and Louisiana” under the second *54 paragraph of the second part, this specific exception to through rates is applicable only “via Mississippi River Crossing north of Memphis, Tennessee,” and not applicable under the routing south of Memphis at the New Orleans crossing.
Plaintiff has argued that one of the purposes of a provision such as Item 240-B is to prevent unduly circuitous routing of traffic, but there is no evidence in the record that there were any applicable tariff provisions which limited the circuity of the routing in this case. Although the route used by plaintiff’s expert witness for a mileage via Memphis was 1,335 miles as compared with the mileage of 1,534 miles on defendant’s routing through New Orleans, the shorter Memphis routing proposed by plaintiff for comparison was constructed by using the lines of a railroad not designated on the bills of lading or involved in the route actually used.
The restriction (second proviso) refers to shipments originating in four western states: Colorado, Nebraska, South Dakota and Wyoming. It is clear that if a shipment originates in one of these states destined to one of the states named in Item 240-B it normally would move directly via a gateway north of Memphis, and to insure that it does the first proviso of Item 240-B was inserted in the tariff. However, the carrier recognizes that in some instances a shipment originating in one of these states might move south first, either for partial unloading or for storage-in-transit, as in this case. When this happens, it would be illogical to have the shipment routed north again so that it could move over a gateway north of Memphis in order to comply with the restriction in part one of Item 240-B. Therefore, the second part of Item 240-B was inserted to insure that shipments such as this would cross south of Memphis, which is the case here where the shipments crossed at New Orleans.
The undisputed testimony shows that in transportation, the practice generally accepted in interpretation of tariffs is that when, as here, exceptions to application of rates are published in the same manner as Item 240-B, it is to be understood that what is not restricted is permitted; that, consistent *55 with such practice, the Government reasonably construed the exception in the second part of Item 240-B providing “[w]hen traffic is routed thru Arkansas or Louisiana rates will not apply via Mississippi River Crossings north of Memphis, Tenn. * * to mean that the rates (through single-factor) would apply via the Memphis Crossing and crossings south thereof; and that, therefore, since the shipments involved moved through Arkansas and Louisiana, and over the Mississippi River via the New Orleans River Crossing, which is south of Memphis, the application of the through single-factor rate to the shipments is authorized by the second part of Item 240-B.
In view of the foregoing, it is concluded and found, as a fact, that Item 240-B of Supplement 276 to Western Trunk Lines’ Freight Tariff 385, does not prohibit the application of through single-factor rates to the shipments involved.
Since the through single-factor rate applies to the shipments involved, and plaintiff has been paid on the basis of said rate, plaintiff has been paid in full, and is not entitled to recover, and the petition is dismissed.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial 'Commissioner Franklin M. Stone, and the briefs and argument of counsel, makes findings of fact as follows:
L Plaintiff is a Virginia corporation, and a common carrier by railroad of persons and property in interstate commerce for the southeastern section of the United States, its lines of railroad connecting with those of other railroad companies also engaged in interstate commerce.
2. On July 1, 1967, plaintiff succeeded to all the rights, assets and liabilities of the Atlantic Coast Line Railroad Company (acl), which also was a corporation organized under the laws of the Commonwealth of Virginia and was a common carrier by railroad engaged in interstate commerce.
3. During October 1964, plaintiff’s predecessor and its connecting carriers performed transportation services for *56 defendant, consisting of two shipments of ammunition from Defense, Texas, a storage-in-transit point, to Goldsboro, North Carolina. Prior to the shipments moving from Defense to Goldsboro, they had moved from Panhandle, Nebraska, to Defense, to be stored for later reshipment to final destination.
4. For transportation purposes, a transit shipment, i.e., a shipment stopped en route and later moved outbound on a new bill of lading to the ultimate destination, in effect moves from the original shipping point to the final destination, and is charged in the same manner as if it had moved from the original point to the final destination without having been stopped at the transit point for storage or other purposes.
5. The two shipments from Panhandle, Nebraska, to Defense, Texas, the storage-in-transit point, moved on Government bills of lading Nos. B-0623135 (Joint Ex. B) and B-0623147 (Joint Ex. A), dated J anuary 25,1962, and January 26,1962, respectively. The two shipments from Defense, Texas, to Goldsboro, North Carolina, moved on Government bills of lading Nos. AT-046977 (Joint Ex. C) and AT-046980 (Joint Ex. D), dated October 1,1964, and October J, 1964, respectively. The routings of the shipments, both from Panhandle to Defense, and from the latter point to Golds-boro, were placed in said bills of lading by defendant without any suggestion for such routings from the carriers, and without any junctions specified.
6. Upon completion of the transportation services relating to the shipments in question, plaintiff’s predecessor submitted bills to defendant for the amount of the freight charges, based on the through single-factor rate from Panhandle, Nebraska, to Goldsboro, North Carolina, which bills were paid as originally stated. Subsequently, upon reaudit of said bills, plaintiff’s predecessor concluded that the through rate was not applicable to the shipments involved and submitted a supplemental bill to the General Accounting Office, based on the combination of rates, which bill was not paid by de *57 fendant. Thereafter, on December 8, 1967, plaintiff filed its petition herein.
7. The parties have stipulated that the issue in this case is as follows:
Whether Item 240-B of Supplement 276, Western Trunk Line Freight Tariff 885, prohibits the application of through single-factor rates to the shipments involved.
Plaintiff’s position is that the question stated above should be answered in the affirmative and defendant contends to the contrary.
8. The parties have stipulated to the effect that if plaintiff prevails on the issue set forth in finding 7, supra, then defendant owes plaintiff an additional amount of $695.72, i.e., the sum that represents the difference between the through single-factor rate and the combination rate, for the transportation of the freight involved herein, but if defendant prevails on said issue, then plaintiff has been paid in full and the petition should be dismissed.
9. When the shipments moved from Defense, Texas, to Goldsboro, North Carolina, they were routed by defendant via the Texas & Pacific Railroad Company (t & p), the Louisville and Nashville Railroad Co. (l & w), and the Atlantic Coast Line Railroad Company (acl) . This necessitated the movement of the shipments via t & p to New Orleans. Louisiana, via l & N to Montgomery, Alabama, and via age to final destination. In order for t & p to comply with the routing set out in the bills of lading and deliver the shipments in question to l & n, the shipments were moved through Arkansas and Louisiana, and had to move through New Orleans where they necessarily crossed the Mississippi River over the New Orleans River Crossing, which is south of Memphis, Tennessee. The shipments then moved to Montgomery, and from there on to final destination, via the carriers indicated above.
10 (a). Item 240-B, Supplement 276 to Western Trunk Lines’ Freight Tariff No. 885 (Joint Ex. G — hereinafter *58 sometimes referred to as “Item 240-B” or “the tariff item”), provided in pertinent part:
EXCEPTIONS TO APPLICATION OP RATES
CARRIER EXCEPTION
between and Bates will not apply via: Points in Points in
Kentucky.
Tennessee.Mississippi Biver Grossings
North Carolina_ south of Memphis, Tenn.
Virginia.
Colorado. When traffic is routed thru
Nebraska points in the Arkansas or Louisiana following Groups: rates will not apply via
807, 861, 895,1053, Alabama. Mississippi Biver Cross-
1061...Florida. ings north of Memphis,
South Dakota: Georgia. Tenn., nor via Virginia
All Bapid City and Kentucky. gateways named in Note
Car- points in the Louisiana. A of Item 250. (See Ex-
riers . . . following Groups: Mississippi. ception.)
803, 807..North Carolina_When traffic is routed thru
Wyoming..South Carolina_ Missouri, Kansas, Iowa,
Tennessee_ Nebraska, Wisconsin,
Virginia_ Minnesota, North Dakota, or South Dakota, the rates are restricted to the same gateways and routes as are the rates to and from points in those states thru which the Colorado or Wyoming traffic moves.
(b). The testimony and documentary evidence show that Panhandle, Nebraska, was in Group 1053, one of the several groups in Nebraska embraced by Item 240-B.
11 (a). It will be noted that Item 240-B is divided into two (unnumbered) parts or provisions, but that the parts designated under the heading “Between points in” remain constant and relate to both parts. The provision in the first part is plainly restrictive and, considered alone, means that the through single-factor rates are not applicable to shipments made between designated points in certain states, including Panhandle, Nebraska, involved here, and points in the four states named in said part, including North Carolina points, via “Mississippi River Crossings south of Memphis, Tenn.”; and that, in other words, all such shipments must move across the Mississippi Eiver at or north of Memphis in order for said rates to apply.
(b). The second part or provision of Item 240-B provides that when shipments between designated points in certain *59 states (including Panhandle, Nebraska) and points in 10 named states, including all four of the states specifically listed in the first part of the tariff item, are routed through Arkansas or Louisiana, the through rates will not apply to such shipments if they cross the Mississippi River north of Memphis, Tennessee. This part is the troublesome one that really gives rise to the present controversy between the parties.
In brief, plaintiff contends that the second part, referring to shipments moving through Arkansas and Louisiana, is an added restriction to the one in the first part, but defendant states it is alternate.
12. Mr. Dennis A. Boyette, presently Manager of Pricing for plaintiff, who has been employed by plaintiff’s predecessor and plaintiff since September 1930, testified on behalf of plaintiff as an expert witness. In substance, he stated, among other things, that when the provisions of both the first and second parts of Item 240-B are read together, they say that a shipment from Panhandle, Nebraska, to Goldsboro, North Carolina, when routed through Arkansas or Louisiana, must move via Memphis, Tennessee, in order for the through single-factor to apply. As to the proper application of Item 240-B, Mr. Boyette expressed the opinion that if a shipment from Panhandle to Goldsboro moved via a gateway or Mississippi River Crossing south of Memphis, the through single-factor rate would not be applicable to the shipment. He stated that, in other words, a combination rate would be applied on any traffic moving through New Orleans, Louisiana, or any of the Mississippi River Crossings south of Memphis. Defendant seems to suggest that the foregoing testimony shows plaintiff’s position to be that when a shipment originates in Nebraska, Colorado, South Dakota, or Wyoming, and is destined to one of the southeastern states listed in the tariff, the shipment has to “cross the Mississippi River at Memphis and Memphis only.” This is an inaccurate indication of plaintiff’s position because it is reasonably clear from the testimony of Mr. Boyette on direct and cross-examination, that he was referring to the shipments involved here and saying that once they got into Arkansas or Louisiana, there was only one way for them to go (and still be entitled to the through rate), and that was through Memphis.
*60 Mr. Boyette testified that tbe purpose of a provision such, as Item 240-B is to prevent movement of traffic via unduly circuitous routes. In this connection, it should be noted that plaintiff introduced in evidence a map of the United States with two projected routes superimposed thereon (Plaintiff’s Ex. 1). The one in black represents the approximate route of movement of a shipment from Panhandle, Nebraska, to Defense, Texas, and through New Orleans, Louisiana, to Goldsboro, North Carolina. The one in red is a proposed route that could have been used to go through the Memphis Gateway. Mr. Boyette made a mileage comparison, stating that the actual route of movement was 57.9 percent circuitous. However, the comparison made was the actual miles traveled to the short line class rate distance which is not shown on said map. On cross-examination, the witness finally admitted that the distance over the route actually used was 46 percent circuitous as compared with the distance over the proposed route, i.e., the one shown in red. He could point to no tariff or Section 22 quotation requirement which limited the circuity of movement of the shipments involved. Since there is no evidence in the record that there were any tariff provisions applicable to the shipments involved in existence which limited the amount of circuity, the testimony relating to this subject matter is not considered relevant. Furthermore, in any event, no weight is given to Mr. Boyette’s testimony for reasons apparent from certain facts included in finding 13, infra, which are based on credible testimony presented by another expert witness (Mr. Robert E. Smith, mentioned in said finding), relating to the subject of circuitous routing.
13. Mr. Robert E. Smith, presently a Transportation Specialist in the Special Reports Branch of the Transportation Division, United States General Accounting Office (gao), who has been continuously employed in said Division as a Freight Technician or Transportation Specialist since August 1945, presented expert testimony on behalf of defendant. He stated the position of the gao to be that Item 240-B permits the application of the published single-factor through rate to the shipments involved in this suit, and that since said tariff item is published in two separate parts, the *61 exception in the second part, being more specific as to such shipments, is applicable thereto.
Mr. Smith testified that in transportation, the generally accepted practice in interpreting tariffs is that when, as here, exceptions to application of rates are published in the same manner as in the tariff in question, “it is to be understood that what is not restricted is permitted”; and that, accordingly, the exception in the first part of Item 240-B, providing that “Eates will not apply via: Mississippi Eiver Crossings south of Memphis, Tenn.,” is to be understood as providing that the rates will apply via the Memphis Crossing and crossings north of Memphis; that as to the second part of said tariff item, the exception provides: “When traffic is routed thru Arkansas or Louisiana rates will not apply north of Memphis * * ; and that by this it is to be understood that the rates will apply via the Memphis Crossing and crossings south of Memphis.
He further testified to the effect that the application of the through single-factor rate via the New Orleans Crossing to the shipments involved in the instant case appears to be restricted by the first part of the tariff item, but permitted by the second part thereof; that faced with such a situation, the tariff user would be governed by the principle that the more specific provision takes precedence over the general provision.
After correctly pointing out that the second part of the tariff item deals specifically with traffic routed through Arkansas or Louisiana, the witness went on to state that most traffic between Western Trunk Line territory and the southern territory would ordinarily be routed via gateways north of Memphis, but it is evident that the tariff makers (the railroads) did not intend to limit the traffic to such northern routes; that if the shipper chose to use routes through Arkansas or Louisiana, it would (as shown later) be circuitous not to use the crossings south of Memphis; and that, therefore, the specific provisions of the second part restrict movement via crossings north of Memphis on such traffic and, by implication, provide for the application of through single-factor rates via southern crossings when routed through Arkansas or Louisiana.
*62 Mr. Smith stated that it is the interpretation of the gao that the provision of the second part of Item 240-B is a specific one which takes precedence over the general provision in the first part. He appeared to concede that the tariff item is ambiguous 'and admitted on cross-examination that the interpretation of the gao is that the provisions in the first part are contravened by the provisions in the second part. Mr. Smith stated in effect that the position of the gao is supported by the fact, among others, that the Transportation Officer at the transit point, i.e., Defense, Texas, who was charged with the responsibility of knowing the availability of routes and the application of through rates, selected the route via the New Orleans Crossing for the movement of the shipments involved; that the carrier’s own billing clerk applied the through single-factor rates in the original bill submitted to the Government; and that the gao has consistently maintained that the through rate applies to shipments via crossings south of Memphis, Tennessee.
In connection with the question of circuity, Mr. Smith noted that plaintiff’s witness, Mr. Boyette (finding 12), testified that the freight mileage from Defense, Texas, to Golds-boro, North Carolina, via the t & p routing to New Orleans, Louisiana, and Montgomery, Alabama, is 1,531 miles, as compared to 1,335 miles via a route authorized in the tariff, from Defense to Goldsboro, via the t & p to Texarkana, Arkansas-Texas; the Missouri Pacific to Memphis; the l & N to Atlanta, Georgia; the Georgia Eailroad to Augusta, Georgia; and the aol to destination. The class rate distance from Defense to Goldsboro is figured over Memphis. The mileage from Panhandle, Nebraska, to Defense, Texas, via the route specified on the outbound Government bills of lading, is 1,201 miles, making the total mileage by Mr. Boyette’s comparative Memphis route 2,736 miles. On that basis, the circuity via the New Orleans and Montgomery route is only about 7 percent which Mr. Smith stated is not unduly circuitous.
Mr. Smith pointed out that the route via Memphis, used by plaintiff’s witness for mileage comparison, is constructed using the lines of the Georgia Eailroad which was not designated on the bills of lading or involved in the route actually *63 used. He stated that tlie proper bases for. comparison are the routes via Memphis, thence l & N to Atlanta or to Birmingham, and thence acl to destination, which routes are authorized in the applicable tariff and use only the carriers designated on the bills of lading. The mileage from Defense to Goldsboro via the Atlanta route is 1,590 miles, and the mileage via Birmingham is 1,630 miles. Thus, it is apparent that the route via New Orleans and Montgomery over which the shipments moved, being 1,534 miles, is shorter than either of the two comparative routes mentioned.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and the petition is therefore dismissed.

We are indebted to Trial Commissioner Franklin M. Stone for Ms Findings of Fact, which we have adopted in most part.

 Comment (d) on § 236 states: “Since one who speaks or writes, can, by exactness of expression, more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity of language are resolved against the former in favor of the latter.* * *”